UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

                                        **Hon. Hugh B. Scott**

                                        12-CR-45S

Jordan Ali et al.,

                                        **Decision**
                        Defendants.              **& Order**

Pending before the Court are omnibus pretrial motions from defendants Jordan Ali (Dkt. No. 85), Shane Grafman (Dkt. No. 76), Jason Nati (Dkt. No. 83), Jacquelyn Witman (Dkt. No. 28), and Gabriel Rodriguez (Dkt. No. 84). Broadly speaking, defendants seek more details about the charges against them by way of a Bill of Particulars; production of various types of pretrial discovery including minutes of grand jury proceedings; and identification of either Government informants or expected trial witnesses. Some defendants also seek severance. The Government opposes defendants' various demands, arguing that it has provided the discovery required under Rule 16 of the Federal Rules of Criminal Procedure ("FRCP") and will respect its continuing obligations; and that it does not owe other discovery, if at all, until the time of trial.

The Court held oral argument on December 12, 2012 and now grants or denies the respective motions as explained below.

**Background**

This case concerns allegations that defendants conspired in a multimillion-dollar drug operation that distributed cocaine and marijuana. Before the Government filed any indictments, this Court found probable cause to sign a criminal complaint (Case No. 12-MJ-2001) against defendants Ali and Grafman and former defendant Elijah Chaffino. In the complaint, the Government alleged that it had seized parcels sent from Arizona to Buffalo, New York that contained over 100 pounds of marijuana. Ali, Grafman, Chaffino, and others allegedly caused these parcels to arrive in Buffalo. On February 3, 2010, law enforcement agents stopped Grafman on an Oklahoma Highway and seized $671,385 from a hidden compartment in his vehicle. The Government arrested Ali on January 30, 2012 in Buffalo after discovering that he had flown into town and had rented a car to collect certain drug payments. The rental car contained boxes, bubble wrap, packing tape, cling wrap, and other equipment allegedly associated with drug packaging.

On February 2, 2012, the Government filed an indictment against Ali, Grafman, Nati, Chaffino, and Witman. On July 12, 2012, the Government filed an essentially identical superseding indictment against defendants Ali, Grafman, Nati, Witman, and Rodriguez. In Count One, the Government accused all defendants of violating 21 U.S.C. § 846 by conspiring "to commit the following offenses, that is, to possess with the intent to distribute, and to distribute, five (5) kilograms or more of a mixture and substance containing cocaine, a Schedule II controlled substance, and one hundred (100) kilograms or more of a mixture and substance containing marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 841(b)(1)(B)." (Dkt. No. 59 at 2.) In

Count Two, the Government accused Ali and Grafman of violating 18 U.S.C. § 1956(h) by conspiring "to knowingly conduct financial transactions affecting interstate commerce, namely, the transfer, delivery and disposition of monetary instruments, involving the proceeds of specified unlawful activity, namely, the unlawful distribution of cocaine and marijuana, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to do so, in violation of Title 21, United States Code, Section 846, with the intent to promote the carrying on of specified unlawful activity, and while knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i)." (Id. at 2–3.) The superseding indictment also contained two forfeiture allegations.

Defendants now have filed their respective omnibus motions and to seek various forms of relief as explained below.

**Discovery**

In their respective motions, the defendants identified several general categories of discovery sought in the respective motions, including defendant Witman's request for hearsay statements under Federal Rule of Evidence ("FRE") 803(24). The government has represented that it has provided voluminous discovery. The parties have not identified any outstanding discovery issues at this time. If there are additional specific discovery requests outstanding, the defendants are granted leave to make further application for relief.

**FRCP 12 Notice**

Pursuant to FRCP 12(b), defendants have requested that the Government give notice of its intention to use at trial any evidence which is discoverable under FRCP 16, to give them an opportunity to move to suppress under FRCP 12 (b)(3)(C). To the extent that the Government has not already done so, the Government is directed to provide such notice to the defendants.

**Brady/Giglio & Jencks Act Material**

The defendants seek the disclosure of all potentially exculpatory materials, including information to be used for the impeachment of the Government's witnesses, as required under Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. Brady material, as those cases have come to define it, includes all evidence which may be favorable to the defendant and material to the issue of guilt or punishment. Such evidence includes "[a]ny and all records and/or information which might be helpful or useful to the defense in impeaching ... [and] [a]ny and all records and information revealing prior misconduct ... attributed to the [Government's] witness." U.S. v. Kiszewski, 877 F.2d 210 (2d Cir. 1989). Defendants also seek disclosure of the statements of witnesses under the Jencks Act (15 U.S.C. § 3500).

The Government has acknowledged its obligations under Brady and Giglio v. U.S., 405 U.S. 150 (1972), as well as the Jencks Act. The Government represents that it will provide this material as directed in the District Court's trial order.

Neither the Supreme Court, nor the Second Circuit,[1] have ruled directly on whether there is a meaningful distinction between "exculpatory Brady" and "impeachment Brady" materials for purposes relating to the time within which such information must be disclosed. Several other courts have discussed the issue at hand, which often arises in the context of a potential, if not inherent conflict between the Government's obligations to disclose under Brady, and the Government's right to delay disclosure of certain information pursuant to the Jencks Act. Those cases suggest that the Court has some discretion with respect to directing the timing of such disclosure. U.S. v. Campagnuolo, 592 F.2d 852 (5th Cir. 1979) (the Court interpreted Brady to require disclosure "at the appropriate" time, which often is prior to trial); U.S. v. Perez, 870 F.2d 1222 (7th Cir. 1989) (the government's delay in disclosing Brady material violates due process only if the delay prevented the defendant from receiving a fair trial); U.S. v. Ziperstein, 601 F.2d 281 (7th Cir. 1979) (a defendant receives a fair trial, notwithstanding delayed disclosure of Brady material, as long as disclosure is made before it is too late for the defendant to make use of any benefits of the evidence). But see U.S. v. Wilson, 565 F. Supp. 1416 (S.D.N.Y. 1983) (impeachment material need not be produced prior to trial); U.S. v. Biaggi, 675 F. Supp. 790 (S.D.N.Y. 1987) (information bearing on a witness's credibility may be turned over at the same time as [Jencks Act] materials); U.S. v. Feldman, 731 F. Supp. 1189 (S.D.N.Y. 1990) (it is sufficient for the government to disclose Brady impeachment materials along with [Jencks Act] materials).

---

[1] In a footnote in its opinion in Lucas v. Regan, 503 F.2d 1, 3 n.1 (1974), the Second Circuit stated that "[n]either Brady nor any other case we know of requires that disclosures under Brady be made before trial."

The Jencks Act relates only to "statements" made by government witnesses. Such statements may include inconsistencies which make them useful for impeachment purposes, and thus, subject them to disclosure under Brady principles. To this extent, it has been suggested that the constitutional requirements underlying Brady could act to modify the Jencks Act. U.S. v. Campagnuolo, 592 F.2d 852, 860 (5th Cir. 1979). But see U.S. v. Presser, 844 F.2d 1275 (6th Cir. 1988)(the Government may not be compelled to pretrial disclosure of Brady or Jencks material). The record in this case does not reflect whether any of the materials withheld by the government may be considered both Brady and Jencks material. Certainly "impeachment Brady" material may include several items which are not considered "statements" under the Jencks Act.

This Court believes that fundamental fairness and the constitutional due process requirements which underlie Brady mandate that the Court have some discretion with respect to the timing of the disclosure of such information, even if it may be considered combined Brady/Jencks material. Indeed, even with respect to purely Jencks Act materials, the Second Circuit has stated that "pre-trial disclosure will redound to the benefit of all parties, counsel and the court, ... sound trial management would seem to dictate that Jencks Act material should be submitted prior to trial ... so that those abhorrent lengthy pauses at trial to examine documents can be avoided." U.S. v. Percevault, 490 F.2d 126 (2d Cir. 1974); U.S. v. Green, 144 F.R.D. 631 (W.D.N.Y. 1992).

In the instant case, and while balancing all of the above, the Court concludes that disclosure of such inculpatory and impeachment material, if any exists, in accordance with the common practice in this district (prior to trial so long as it is disclosed in sufficient time for the

defendants to have a fair opportunity to utilize the information at trial) is sufficient.

**Identity of Informants**

Defendants seek the pretrial disclosure of the identity of any informants in this case. The Government is not required to provide early disclosure of the identities of informants unless it is essential to the defense. Roviaro v. U.S., 353 U.S. 52, 60-61 (1957); U.S. v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988). Nor does FRCP 16 require the Government to disclose the names of witnesses prior to trial. U.S. v. Bejasa, 904 F.2d 137, 139 (2d. Cir. 1990). Additionally, the Government disclosed at oral argument that it already gave counsel for defendant Grafman the name of one cooperating witness and that it would offer that witness's plea agreement for review.

Defendants have not established that further pre-trial disclosure of the identities of informants is essential to their defense. This request is denied.

**Bill of Particulars**

All defendants seek a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. "Whether to grant a bill of particulars rests within the sound discretion of the district court." U.S. v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984). Bills of particulars are to be used only to protect a defendant from double jeopardy and to enable adequate preparation of a defense and to avoid surprise at trial. U.S. v. Torres, 901 F.2d 205 (2d Cir. 1990). The circumstances warranting a bill of particulars are limited. A defendant may obtain a bill of particulars only if the requested information is necessary "(i) to enable him to prepare his defense; (ii) to avoid unfair surprise at trial; and (iii) to preclude a second prosecution for the

same offense." U.S. v. Persico, 621 F. Supp. 842, 868 (S.D.N.Y. 1985). "In deciding a motion for a bill of particulars, '[t]he important question is whether the information sought is necessary, not whether it is helpful.'" U.S. v. Conley, No. 00 CR 0816 DAB, 2002 WL 252766, at *4 (S.D.N.Y. 2002). A bill of particulars "should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense." U.S. v. Henry, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994). The Government is not obligated to "preview its case or expose its legal theory," U.S. v. LaMorte, 744 F. Supp. 573 (S.D.N.Y. 1990); U.S. v. Leonelli, 428 F. Supp 880 (S.D.N.Y. 1977); nor must it disclose the precise "manner in which the crime charged is alleged to have been committed," U.S. v. Andrews, 381 F.2d 377 (2d Cir. 1967); see also U.S. v. English, No. S1 10 Cr. 431, 2011 WL 3366490, at *4 (S.D.N.Y. July 29, 2011) ("Furthermore, a bill of particulars should not be required in order to detail the 'wheres, whens, and with whoms' of the crime charged . . . . [Defendant's] specific request for a bill of particulars naming the persons listed as 'others known and unknown' is an attempt to compel the Government to disclose the 'with whoms,' which it is not required to do.") (citations omitted). Notwithstanding the above, there is a special concern for particularization in conspiracy cases. U.S. v. Davidoff, 845 F.2d 1151 (2d Cir. 1988).

In the instant case, the Government has produced substantial discovery to defendants. Upon review of the indictment, and in light of the discovery and information already provided or promised in this case, defendants have not demonstrated that further particularization is required to protect them from double jeopardy or to enable them to adequately prepare a defense and avoid surprise at trial.

**FRE 404, 608 and 609 Material**

Defendants also seek information under FRE 404, 608, and 609. FRE 404(b) governs requests for disclosure of all evidence of prior bad acts that the Government intends to use in its case-in-chief. FRE 404 requires that defendants be given "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to use at trial." To the extent that the Government intends to use any such evidence of a prior bad act in its case in chief, the Government shall produce all FRE 404(b) evidence as directed by the District Court in the trial order.

With respect to defendants' requests under FRE 608 and 609, the only notice requirement imposed by either Rule applies where a party intends to introduce evidence of a conviction that is more than ten years old. Under such circumstances, FRE 609(b) mandates that "the proponent [give] to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence." To the extent the Government intends to use a conviction more than 10 years old, it must comply with this requirement. The Government has no obligation to provide any defendant with notice of any material that will be used to impeach him pursuant to FRE 608 should he elect to testify. See U.S. v. Livoti, 8 F. Supp. 2d 246 (S.D.N.Y. 1998); U.S. v. Song, No. 95 Cr. 129 (KMW), 1995 WL 736872, at *7 (S.D.N.Y. Dec. 13, 1995).

**Disclosure of Grand Jury Transcripts**

Defendants also seek disclosure of the Grand Jury transcripts. There is a presumption

that Grand Jury proceedings are lawful and regular, U.S. v. Torres, 901 F.2d 205, 232 (2d Cir. 1990), overruled on other grounds as recognized by U.S. v. Marcus, 628 F.3d 36 (2d Cir. 2010), and disclosure of Grand Jury proceedings is available only by order of the Court. See FRCP 6(e). A party seeking disclosure of Grand Jury proceedings bears the burden of establishing a "particularized need" or "compelling necessity" for such disclosure which outweighs the policy of grand jury secrecy. Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211 (1979); Pittsburgh Plate Glass Co. v. U.S., 360 U.S. 395, 400 (1959); In re Rosahn, 671 F.2d 690, 695 (2d Cir.1982). Unspecified allegations of impropriety or mere speculation are not sufficient to satisfy this heavy burden. U.S. v. Calandra, 414 U.S. 338, 345 (1974). Therefore, "review of grand jury minutes is rarely permitted without specific factual allegations of governmental misconduct." Torres, 901 F.2d at 233.

Defendants have not presented any particularized need or advanced any proof controverting the presumption of regularity in the Grand Jury proceedings in this case. This request is denied.

**Active Voir Dire, Cross-Examination of Experts**

Defendants have requested leave to cross-examine any expert Government witnesses outside the presence of the jury, and to have an active role in the voir dire process. These issues are more appropriately determined by the District Court Judge presiding over the trial in this matter.

**Preservation of Notes and Other Evidence**

Defendants seek the preservation of evidence and notes taken by law enforcement personnel involved in this matter. The Government is directed to preserve such material.

**Disclosure of Co-Conspirator Statements**

Defendants have also requested production of all statements made by any co-conspirator, to the extent that the statement was made in furtherance of the conspiracy and the declarant will not be testifying for the government at trial.

Generally, it is well established that the statements of co-conspirators are not discoverable under FRCP 16(a). In re U.S., 834 F.2d 283, 286 (2d. Cir. 1987); U.S. v. Percevault, 490 F.2d 126 (2d Cir. 1974); U.S. v. Green, 144 F.R.D. 631, 638 (W.D.N.Y. 1992). The Jencks Act provides the exclusive procedure for discovering statements that Government witnesses have given to law enforcement agencies. U.S. v. Covello, 410 F.2d 536, 543 (2d. Cir. 1969). Some courts have ordered disclosure of statements made by a co-conspirator, based upon the rationale that statements made by a co-conspirator in furtherance of the conspiracy may be treated as the defendant's own statements, if the co-conspirator is not a prospective Government witness. U.S. v. Turkish, 458 F. Supp. 874, 882 (S.D.N.Y. 1978).

Defendants seek a ruling akin to an admissibility determination of co-conspirator's statements. But see U.S. v. Maisonet, No. 08–CR–69S, 2009 WL 2876170 (W.D.N.Y. 2009) (The relief sought by the defendant, to exclude from the trial "any statements made by others other than those testifying co-conspirators or other witnesses that have been noticed to defense at the trial herein," must be sought in the form of a motion in limine before the United States

District Judge to whom this case is assigned.).  Thus, this issue is denied as premature at this time.  The issue may be raised prior to trial before the District Judge presiding over the trial in this case.

**Severance**

Defendants Ali and Grafman seek severance of their trial from that of the co-defendants in this case.  Such motions are more appropriately heard and determined by the trial court, which is in the best position to rule on the issues presented.  See U.S. v. Hennings, No. 95–CR–0010A, 1997 WL 714250 (W.D.N.Y.  1997); U.S. v. Vona, 842 F. Supp. 1534 (W.D.N.Y. 1994).

**Audibility**

Defendant Ali seeks an audibility hearing regarding any recordings the Government intends to use at trial. Ali currently does not allege that any particular recording is inaudible.  If after having an opportunity to listen to any such recordings to be used at trial, defense counsel believes an audibility hearing is warranted, counsel is directed to notify the Court so that such a hearing can be scheduled.

## Conclusion

The respective motions for pretrial discovery are granted in part and denied in part consistent with the above.

So Ordered.

*/s/ Hugh B. Scott*
United States Magistrate Judge
Western District of New York

Buffalo, New York
February 26, 2013